Slip Op. 12 - 124

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

WELCOM PRODUCTS, INC.,

                Plaintiff,

           v.

UNITED STATES,

               Defendant,

     and

GLEASON INDUSTRIAL PRODUCTS,
INC., and PRECISION PRODUCTS, INC.

       Defendant-Intervenors.

</td><td>

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

</td><td>

Before: R. Kenton Musgrave, Senior Judge
Court No. 11-00370

</td></tr>
</table>

## OPINION

[Granting plaintiff's motion for judgment requesting remand to the Department of Commerce for further explanation of the rationale for its finding that one model of hand truck was within the scope of the antidumping order. Defendant-intervenor's cross-motion for judgment denied.]

Dated: September 27, 2012

*J. Kevin Horgan, Judith L. Holdsworth* and *Gregory S. Menegaz*, of *deKieffer & Horgan PLLC*, Washington, D.C., for plaintiff.

*Joshua E. Kurland*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant. With her on the brief were *Stewart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of counsel on the brief was *Nathaniel J. Halvorson*, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce.

*Matthew P. Jaffe*, Neville Peterson LLP, Washington, D.C., for defendant-intervenors.

Musgrave, Senior Judge:  In this case, the U.S. Department of Commerce, International Trade

Administration ("Commerce") found that one model of hand truck was within the scope of an

antidumping order while two others were not.  Plaintiff claims that Commerce erred in finding

the one model within scope because it previously found that similar models were outside the

scope of the order, while defendant-intervenors claim that Commerce erred by finding the two

other models outside scope.  The government defends Commerce's actions on both counts.  For

the reasons explained below, plaintiff's request for remand is granted, and defendant-

intervenor's request for reversal of the scope findings is denied.

### *I. Facts*

In 2004, Commerce entered an antidumping duty order on certain varieties of

hand trucks manufactured in China.  *See Notice of Final Determination of Sales at Less Than*

*Fair Value: Hand Trucks and Certain Parts Thereof from the People's Republic of China*, 69

Fed. Reg. 60,980 (Dep't Commerce, Oct. 14, 2004).  The antidumping order's scope includes a

"utility cart exclusion" which provides in relevant part as follows:

> Excluded from the scope are small two-wheel or four-wheel utility carts
> specifically designed for carrying loads like personal bags or luggage in which the
> frame is made from telescoping tubular material measuring less than 5/8 inch in
> diameter. . . .

*Notice of Antidumping Duty Order: Hand Trucks and Certain Parts Thereof From the People's*

*Republic of China*, 69 Fed. Reg. 70,122 (Dec. 2, 2004) ("Order").

Commerce analyzed the utility cart exclusion in a scope ruling involving plaintiff

WelCom Products, Inc.'s ("WelCom") 2004 Magna Cart model at the time of the original

antidumping investigation that gave rise to the antidumping order. *See* Memo from Analysts to

Jeffrey A. May, Scope Exclusion/Clarification Requests (Sept. 3, 2004) (P.D. 2 at Ex. 2) ("2004

Magna Cart Ruling"). In the 2004 Magna Cart Ruling, Commerce concluded that a telescoping center tube attached between a cross member and the toe plate was part of the cart's frame and that the utility cart exclusion applied because that tube measured less than 5/8" in diameter. 2004 Magna Cart Ruling at 15. Commerce stated that "[s]ince the scope exclusion does not specify that the frame be exclusively constructed of telescoping tubular material less than 5/8" in diameter, or further define which parts of the frame must telescope, a reasonable interpretation of the scope exclusion language is that the primary focus should be on the diameter of the tubular material comprising the telescoping section(s) of the frame." *Id*. at 16.

Commerce construed this interpretation of the utility cart exclusion in a 2008 scope ruling concerning WelCom's MCX model hand truck. *See* Memo from Katharine G. Huang to Stephen J. Claeys, Request by WelCom Products (MCX Magna Cart) (May 12, 2008) Ex. 3 to WelCom Scope Request ("MCX Ruling"). Unlike the 2004 model, the MCX model lacked the center telescoping tube and featured telescoping side rails comprised of three segments, only one of which measured less than 5/8" in diameter. The MCX Ruling stated that "[c]onsistent with the 2004 Magna Cart Scope Ruling . . . since both telescoping sections are integral components of the frame, and we have determined that the frame does not have to be exclusively constructed of telescoping material less than 5/8 inch in diameter, it is reasonable to focus our analysis on whether either telescoping section of the frame is less than 5/8 inch in diameter." MCX Ruling at 15. Because one section of the telescoping frame was less than 5/8" in diameter, the MCX was determined to be outside the scope of the Order. *Id*. Other scope rulings affirmed this result. *See* Ex. 6 to WelCom Scope Request at 6 (June 10, 2009 Safco

Scope Ruling) and Ex. 7 to WelCom Scope Request at 5-6 (Mar. 26, 2010 Packard Scope Ruling).

On October 12, 2010, WelCom asked Commerce to determine whether three of its Magna Cart hand trucks (models MC2, MCI and MCK) were within the scope of the Order. WelCom Request for Scope Clarification (Oct. 8, 2010). Commerce preliminarily concluded that the MCK, MC2 and MCI did not qualify for the utility scope exclusion on May 9, 2011. *Hand Trucks and Certain Parts Thereof from the People's Republic of China (PRC): Preliminary Scope Ruling – WelCom Products* (May 9, 2011) ("Preliminary Scope Ruling"). In the Preliminary Scope Ruling, Commerce reversed the earlier rulings' interpretations of the utility cart scope exclusion. The MC2 and MCI models, which resembled the cart in the 2004 Magna Cart Ruling, were preliminarily found within scope because Commerce decided the single vertical telescoping tube was not part of the frame. Preliminary Scope Ruling at 7. The MCK model, which resembled the MCX model and the other models ruled outside scope in 2008, was deemed in scope because its telescoping frame rails were not entirely less than 5/8" in diameter. *Id.*

After considering comments by the parties, Commerce ultimately found the MC2 and MCI models were outside the scope of the Order and the MCK model was within its scope. *See Hand Trucks and Certain Parts Thereof from the People's Republic of China (PRC): Final Scope Ruling – WelCom Products (MC2 Magna Cart, MCI Magna Cart, and MCK Magna Cart)*, Memorandum from Steve Bezirganian, International Trade Analyst to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations (Sept. 6, 2011) ("Final Scope Ruling"). Commerce reversed its preliminary finding on the MC2 and MCI

models in deference to the 2004 Magna Cart Ruling's finding that the center telescoping arm was part of the frame.

The MCK model, although similar to a model found outside scope in the three later rulings, was found in scope in the Final Scope Ruling because the telescoping portion of the frame was not entirely less than 5/8" in diameter.  The earlier rulings were found to have "improperly expanded" the 2004 Magna Cart Ruling's interpretation of the scope language. Final Scope Ruling at 17.  Commerce determined that in order to fit within the exclusion, the entire telescoping portion of the frame must be less than 5/8" in diameter.  *Id*. at 16.  The MCK model was in scope because two sections of the telescoping frame were more than 5/8" in diameter.

Plaintiff WelCom challenges the Final Scope Ruling's determination that the MCK model is in scope; defendant-intervenors Gleason Indus. Prod., Inc. and Precision Prod., Inc. ("Gleason") challenge the determination that the MC2 and MCI models are outside the scope of the Order.  All three models at issue here are two-wheel utility carts which but for the utility cart exclusion would fall within the scope of the Order.

## II. Arguments Presented

WelCom argues the utility cart exclusion does not "require" that all telescoping portions of the frame be less than 5/8" in diameter.  Plaintiff's Memorandum in Support of its Motion for Judgment on the Agency Record ("Pl. Memo"), at 15.  Commerce erred by not following the MCX ruling and its progeny because the MCK model is indistinguishable in construction and features with the MCX and Safco/Packard models involved in the earlier rulings.  Pl. Memo at 20.  WelCom argues that the case should be decided according to the

factors set forth in 19 C.F.R. § 351.225(k)(1).  Pl. Memo at 16, citing *Duferco Steel Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) and *Arcelormittal Stainless Belg. N.V. v. United States*, 2011 Ct. Intl. Trade LEXIS 82, Slip Op. 11-82, at \*6-7 (CIT, July 12, 2011) (construing *Duferco*).

        WelCom argues Commerce incorrectly construed the 2004 Magna Cart Ruling because that ruling provides that the entire telescoping portion of the frame need not be less than 5/8" in diameter.  Pl. Memo at 8, 21.  Commerce overturned findings made in its earlier MCX line of rulings without providing adequate reasoning for its reversal of its position.  *Id.* WelCom also argues Commerce failed to address its argument that the 2004 Magna Cart was not reflected in the ITC's injury analysis.  *Id.* at 26-27.  In addition, WelCom argues, the MCK model should be outside the scope because there are no similar hand trucks being made in the U.S.  Pl. Memo at 17, 31.  The matter should be remanded to Commerce for an explanation of why it found the lack of U.S. production of similar merchandise "irrelevant".  *Id.* at 27, quoting Final Scope Ruling at 18.

        Gleason argues that Commerce erred by finding the MC2 and MCI models were outside scope in the Final Scope Ruling.  Memorandum of Points and Authorities in Support of Gleason's Motion for Judgment on the Agency Record ("Gleason Memo") at 8.  Commerce erred by relying on the 2004 Magna Cart scope ruling.  *Id.* According to Gleason, Commerce's decision is unsupported by substantial evidence because the telescoping portions of the carts are not part of the frame, the carts are not small, and they are not designed to carry small loads such as luggage.  Gleason Memo at 17-20.

The government argues that Commerce's decisions on both scope issues are supported by substantial evidence. Defendant's Memorandum in Opposition to Plaintiffs' Rule 56.2 Motions for Judgment Upon the Agency Record ("Deft. Memo") at 11. Commerce reasonably determined that the utility cart exclusion for small carts featuring telescoping tubular materials measuring less than 5/8" in diameter does not require the entire hand truck frame to be made of telescoping tubular material, but it does require the entire telescoping section of the frame to measure less than 5/8" in diameter. *Id*. at 9. The utility cart language is ambiguous and thus required interpretation by Commerce. *Id*. at 14. Commerce correctly gave weight to the 2004 Magna Cart Ruling in deciding that the MCI and MC2 models were outside scope. *Id*. at 16. The government argues that Commerce likewise was correct to reverse its earlier finding that only part of the telescoping portion of the frame needed to have a diameter of less than 5/8" because that reversal flowed directly from the language of the 2004 Magna Cart ruling. *Id*. at 25.

### *III. Standard of Review*

This court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Commerce's findings must be "reached by 'reasoned decisionmaking,' including an examination of the relevant data and a reasoned explanation supported by a stated connection between the facts found and the choice made." *See Husteel Co. v. United States*, 31 CIT __, __, 491 F. Supp. 2d 1283, 1291 (2007) (citing *Elec. Consumers Res. Council v. Fed. Energy Regulatory Comm'n*, 747 F.2d 1511, 1513 (D.C. Cir. 1984)). "In order

to effectuate review of the reasonableness of agency action, '[c]ourts look for a reasoned analysis

or explanation for an agency's decision as a way to determine whether a particular decision is

arbitrary, capricious, or an abuse of discretion.'" *U.S. Steel Corp. v. United States*, 621 F.3d

1351, 1357 (Fed. Cir. 2010), quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369

(Fed. Cir. 1998).  An abuse of discretion occurs where the decision is based on an erroneous

interpretation of the law, on factual findings that are not supported by substantial evidence, or

represent an unreasonable judgment in weighing relevant factors.  *Star Fruits S.N.C. v. United*

*States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

> "An agency action is arbitrary when the agency offer[s] insufficient reasons for

treating similar situations differently." *SKF USA, Inc. v. United States*, 263 F.3d 1369, 1382

(Fed. Cir. 2001) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)).

If the Department provides "no reasonable explanation" for changing a practice that it has

"consistently followed," such a change is an unacceptable agency practice. *See Consol. Bearings*

*Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003).

## *IV. Analysis*

> In analyzing the issues here, Commerce properly began by examining the

language of the Order at issue. The "predicate for the interpretive process is language in the

order that is subject to interpretation." *Duferco Steel Inc. v. United States*, 296 F.3d 1087, 1097

(Fed. Cir. 2002).  The Order states that "small two-wheel or four-wheel utility carts specifically

designed for carrying loads like personal bags or luggage in which the frame is made from

telescoping tubular material measuring less than 5/8 inch in diameter" are excluded from the

scope of the Order.  Although the parties disagree whether this language is subject to

interpretation, the court agrees with the government that it is ambiguous.  Because the terms of

the Order alone were not dispositive, Commerce determined whether it could make a ruling

based upon the request for a scope ruling and the factors listed in § 351.225(k)(1). *See Sango*

*Int'l, L.P. v. United States*, 484 F.3d 1371 (Fed.Cir. 2007).  Accordingly, Commerce considered

"[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the

determinations of [Commerce] (including prior scope determinations) and the [International

Trade] Commission." 19 C.F.R.  § 351.225(k)(1).  Most important among this evidence are

Commerce's earlier rulings.  In the 2004 Magna Cart Ruling, Commerce held that "[s]ince the

scope exclusion does not specify that the frame be exclusively constructed of telescoping tubular

material less than 5/8" in diameter, or further define which parts of the frame must telescope, a

reasonable interpretation of the scope exclusion language is that the primary focus should be on

the diameter of the tubular material comprising the telescoping section(s) of the frame." 2004

Magna Cart Ruling at 16.  In the MCX Ruling, Commerce determined that "the frame does not

have to be exclusively constructed of telescoping material less than 5/8 inch in diameter. . . ."

MCX Ruling at 15.

### A.    Commerce Properly Determined that the MC2 and MCI Carts were Outside Scope

The court first addresses Gleason's argument that the MC2 and MCI carts should

have been found within scope.  In the Final Scope Ruling, Commerce applied the rationale of the

2004 Magna Cart Ruling to the MC2 and MCI carts pursuant to 19 C.F.R.  § 351.225(k)(1).

Commerce concluded that the MC2 and MCI carts were outside scope because "these carts have

a portion of the frame comprised of telescoping tubular material that measures less than 5/8

inches in diameter at all points, are small in size, and are designed for carrying small loads such as personal bags or luggage." Final Scope Ruling at 15.   In making this determination, Commerce considered the description of the merchandise from the Order.   Commerce also followed the interpretation of the scope language from the 2004 Magna Cart Ruling, which held a similar cart was small and suitable for use in carrying luggage.  Commerce held in the Final Scope Ruling that the MC2 and MCI carts were very close in construction and features to the 2004 Magna Cart. *Id.* Although the court disagrees with Commerce's determination within the Final Scope Ruling that the telescoping portion of the frame must at all points be less than 5/8" (explained *infra*), and is sympathetic to Gleason's argument that the telescoping portion of the MC2 and MCI models is not part of the frame, Commerce's reasoning (apart from the "at all points" decision) and methodology comply with the substantial evidence standard.  For these reasons, Gleason's arguments to the contrary are unavailing and the court finds that the portion of the Final Scope Ruling regarding the MC2 and MCI models is supported by substantial evidence.  As a result, Gleason's motion is denied.

### B.    Commerce Improperly Determined that the MCK Carts were Within Scope

The same analysis does not apply to Commerce's determination that the MCK model falls within the scope of the Order.  In the Final Scope Ruling, Commerce reinterpreted the scope language as well as its prior rulings to require that the entire telescoping portion of a hand truck frame be less than 5/8" in diameter.  Commerce used this "at all points" requirement to distinguish the 2004 Magna Cart Ruling from the later rulings which found carts similar to the MCK model outside scope.  Final Scope Ruling at 16-17.  The court disagrees that this

interpretation naturally flows from the language of the Order or the 2004 Magna Cart Ruling and

finds that Commerce's explanation for the reversal of position is unreasonable.

      The court finds instructive our appellate court's recent decision in *ArcelorMittal*

*Stainless Belgium N.V. v. United States*, ___ F.3d ___, 2012 WL 3871378, (Fed. Cir., September

7, 2012) (No. 2011-1578), which reversed this court's finding that Commerce correctly found

that steel plate with a nominal thickness equal to or exceeding 4.75 mm (but with a smaller

actual thickness) was within the scope of an order applicable to plate that was 4.75 mm or

greater. The appellate court scolded "Commerce's apparently shifting views regarding the scope

of the antidumping order" and the "manifest injustice of enlarging the scope of the proceeding in

[an] off-handed manner." *ArcelorMittal*, 2012 WL, at *7. The court believes a similar analysis

applies in this case.

      The Final Scope Ruling overturns the findings of the MCX and later scope rulings

without providing an adequate rationale for the change. *SKF USA, Inc. v. United States*, 263

F.3d at 1382. For example, in explaining the reversal of position from the MCX Ruling,

Commerce cited the 2004 Magna Cart Ruling's focus on "the diameter of the tubular material

comprising the telescoping *section(s)* of the frame." Final Scope Ruling at 16 (emphasis added).

"[The 2004 Magna Cart] ruling specifies 'section(s)' as singular and plural, as a hand-propelled

barrow may have one or more than one telescoping section. The Department interprets this to

mean that all of the telescoping tubular parts of the frame must be less than 5/8 inches in

diameter . . . ." Final Scope Ruling at 16-17.

      The court finds this rationale unsupported by substantial evidence because the use

of both plural and singular in the 2004 Magna Cart Ruling necessarily means that the exclusion

language applies equally to multiple and single telescoping sections that are less than 5/8" in diameter. Because telescoping necessarily involves at least two sections which telescope one into another, it is not possible to have a telescoping frame with only one telescoping section. Thus, Commerce's use of "section(s)" in the 2004 Magna Cart Ruling implies that only one of the telescoping sections can be less than 5/8" in diameter and still qualify for the utility cart exclusion.[1]

The interpretation of the scope language in the later rulings may not be reversed absent a reasoned basis for the change. Commerce's explanation for overruling the later rulings' findings that not all of the telescoping material need be less than 5/8" in diameter is invalid. The distinction made by Commerce is unsupported by the language of the Order, or the other items that Commerce is bound to consider pursuant to *Duferco* and 19 C.F.R. § 351.225(k)(1). The court finds Commerce's explanation for reversing its earlier rulings is insufficient given its imposition of a new requirement for the utility cart exclusion, and that the decision taken is therefore arbitrary and capricious. *Husteel Co. v. United States*, 31 CIT 740, 753, 491 F. Supp. 2d 1283, 1291 (2007); *SKF USA, Inc. v. United States*, 263 F.3d at 1382.

Commerce also failed to adequately address Welcom's allegation that carts with telescoping frames consisting entirely of sections less than 5/8" in diameter would be impractical and unusable. WelCom Reply Brief at 8. Commerce cites to the examples of the MC2 and MCI carts as proof that such carts exist. Final Scope Ruling at 18. But Commerce fails to cite any

---

[1] The use of the term "section" to apply to the individual pieces of telescoping frame portion is supported by the Final Scope Ruling's text. Commerce finds there that the 2004 Magna Cart's single telescoping leg is composed of several sections when it mentions that "[t]he telescoping *sections* of the 2004 Magna Cart consisted of tubular material of ½ inch and ¼ inch diameter. . . ." Final Scope Ruling at 17 (emphasis added).

other record information that addresses WelCom's credible argument that carts made of

telescoping material entirely less than 5/8" in diameter do not exist in the market and are

impractical.

WelCom argues that the Final Scope Ruling gives short shrift to its arguments

that the MCK model should be excluded from the scope because the ITC found no material

injury with regard to small foldable hand trucks.  Pl. Memo at 26-28.  In the Final Scope Ruling,

Commerce noted that the ITC considers "domestic like product", which may have included the

small foldable hand trucks imported by WelCom. "U.S. products resembling the Magna Cart

*could have been* considered in the injury analysis."[2]  Commerce is bound when making scope

determinations to consider "the determinations of the . . . [International Trade] Commission."  19

C.F.R. § 351.225(k)(1).  The court finds the reasoning used to deny WelCom's claims that the

MCK model was not a like product with the hand trucks considered by the ITC in its injury

determination is speculative and unsupported by substantial evidence.  The court is concerned

that Commerce has expanded the requirements for the utility cart exclusion where evidence

exists that the ITC did not consider similar products in its investigation.[3]

---

[2] Final Scope Ruling at 15 (emphasis added).

[3] For example, WelCom points out that ITC investigated products rated for carrying between 300 to 1,200 lbs., whereas the products involved here are rated to carry no more than 150 lbs. Pl. Memo at 27, citing ITC Publ. 3737 at V-3; *see also Wheatland Tube Company v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998) (expansion of scope to cover line pipe improper where product was not considered by ITC); *cf. A.L. Patterson, Inc. v. United States*, ___ CIT ___, 2012 WL 3538722, CIT August 6, 2012, Slip Op. 12-103 at *14-15 ("Commerce cannot include in the final order merchandise for which there was no investigation and for which there was no determination of sales at LTFV or determination of injury.")

### *V. Conclusion*

Because Commerce adequately explained its rationale for following the 2004 Magna Cart Ruling, its determination that the MC2 and MCI hand trucks are outside the scope of the Order is supported by substantial evidence.  The court finds Commerce's rationale for reversing its determination in the 2008 MCX Ruling is unsupported by substantial evidence because those reasons are not supported by the language cited.  Commerce may not overturn the interpretations in the prior MCX and Safco rulings to exclude the MCK Magna Cart from the scope of the Order without a well-reasoned rationale that is in accord with the complete record in this case.  The court also orders Commerce to reconsider its conclusion that the entire telescoping portion of the frame must be less than 5/8" in diameter, and to consider the record developed in the ITC injury determination.  The court instructs Commerce to find whether ITC considered hand trucks similar to the Magna Cart models here were made in the U.S., or were covered by the injury determination.

SO ORDERED.

_____ /s/  R. Kenton Musgrave_____

R.  Kenton Musgrave, Senior Judge

Dated: September 27, 2012

New York, New York